IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dolores Gorsuch,  
*Individually and on behalf of a Class*,

Plaintiffs,

-vs-

Financial Freedom, et. al,

Defendants.

Case No. 3:14 CV 152

MEMORANDUM OPINION
AND ORDER DISMISSING IN PART
CLASS ACTION COMPLAINT

JUDGE JACK ZOUHARY

### INTRODUCTION

The lender on a Federal Housing Administration ("FHA")-insured mortgage, secured by residential property that lies in a flood hazard area, increases a borrower's flood insurance coverage requirements after origination of the mortgage. The lender obtains insurance on the borrower's behalf when the borrower fails to timely obtain the additional flood insurance coverage, receiving a "kickback" from the flood insurance provider. This Court must decide whether either of these lender actions -- the demand for increased flood insurance or the lender-placed insurance framework -- provides a basis for legal relief.

Only the alleged "kickback" scheme detailed in Plaintiff Dolores Gorsuch's ("Gorsuch") Class Action Complaint supports a cause of action. For the reasons below, this Court grants in part and denies in part Defendants Financial Freedom, Financial Freedom Acquisition, LLC ("FFA"), and One West Bank, FSB's ("OneWest") Motion to Dismiss the Class Action Complaint (Doc. 16).

**BACKGROUND**

In December 2007, Gorsuch obtained an FHA-insured reverse mortgage, secured by her home, from Financial Freedom Senior Funding Corp. ("FFSFC") (Doc. 1 at ¶ 41). FFSFC was then a subsidiary of IndyMac Bank, FSB ("IndyMac") (¶ 19). The Federal Deposit Insurance Corp. acquired IndyMac and its subsidiaries in July 2008, selling IndyMac's mortgages and mortgage servicing activities (including Gorsuch's reverse mortgage) to OneWest in March 2009 (¶¶ 20–22). Gorsuch and FFSFC's mortgage contract includes a uniform covenant ("Paragraph 3") that reads (¶ 45):

> **3. Fire, Flood, and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary . . .

At times relevant to Gorsuch's claims (Doc. 16 at 12 n.5), OneWest was a federal savings association (¶ 21), governed by the Home Owners' Loan Act ("HOLA"). FFA, a wholly owned subsidiary of OneWest, "is the current lender-in-interest" to Gorsuch's mortgage (¶ 26). Financial Freedom, a division of OneWest, services and originates reverse mortgages (¶ 23).

Gorsuch's home lies in a "Special Flood Hazard Area" (¶ 32). Gorsuch's lender first required her to obtain flood insurance on her home in June 2008, seven months after origination (¶¶ 44, 73). Gorsuch's initial flood insurance policy carried a $600 annual premium (¶ 73.). Six months later, Regan Insurance, Gorsuch's homeowners' insurance agent, advised Gorsuch that her lender required additional flood insurance coverage, increasing her annual premiums (¶ 74). Four years of periodic demands for increased flood insurance coverage followed (¶¶ 75–76), eventually reaching flood insurance coverage equal to replacement cost value (¶ 77).

In August 2012, Financial Freedom wrote Gorsuch, explaining her flood insurance coverage would expire in forty-five days and that if she did not renew her policy Financial Freedom would purchase flood insurance on her behalf at her expense (¶ 79). Gorsuch called Financial Freedom, stating she was unable to purchase the flood insurance in a single lump-sum payment (¶ 80). Financial Freedom advised Gorsuch that she could either purchase her own flood insurance, or Financial Freedom would purchase flood insurance on her behalf, payable on a monthly basis (*id*.).

In September 2012, Financial Freedom informed Gorsuch she had defaulted on her mortgage because of delinquent "property charges," and that it had advanced $1,791 to pay the property charges (¶¶ 81–82). According to the reverse mortgage, property charges included "taxes, ground rents, [and] flood and hazard insurance premiums" (¶ 83; Doc. 1-12 at 2). When Financial Freedom force-placed flood insurance, totaling $174,000 in coverage, Gorsuch owed approximately $99,000 on her reverse mortgage (¶ 86). *See also* ¶ 95 (noting Financial Freedom again force-placed flood insurance on Gorsuch's property in June 2013).

The force-placed flood insurance cost Gorsuch $1,791 per year, a sum that "was . . . calculated on Financial Freedom's receipt of kickbacks and financial benefits pursuant to agreements with SSIS," Financial Freedom's exclusive provider of force-placed flood insurance (¶¶ 67–71, 85). When SSIS provided insurance on property that secured a Financial Freedom mortgage, "Financial Freedom would either deduct the premiums from the borrower's escrow accounts or would add the premiums to the borrower's indebtedness and SSIS would then kick back a percentage of the premiums to Financial Freedom as a commission" (¶ 71).

Gorsuch asserts three claims. First, Gorsuch argues OneWest and FFA violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., by (among other things) misrepresenting to Gorsuch

3

and members of the putative class that it would force-place flood insurance only in amounts "necessary to protect the value of the Property and Lender's rights in the Property[,]" and "failing at all times to disclose the amount and nature of the commission FFA and OneWest Bank would receive for the purchase of force-placed insurance" (¶¶ 136, 138–42).

Second, Gorsuch contends all Defendants breached the terms of the mortgage contract by force-placing flood insurance in coverage amounts that went "well beyond the pale of what is required by law or related to protecting its interests or the property value" (¶ 163). In the same count, Gorsuch alleges Defendants breached the implied covenant of good faith and fair dealing by (among other things) "[d]emanding and/or force-placing more flood insurance than required by federal law . . .[,] misrepresenting the amount of flood insurance that [Gorsuch] and other [putative] class members were required to maintain on their property[, and] imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant contracts" (¶¶ 158(a), (b), (c)).

Third, Gorsuch alleges all Defendants have been unjustly enriched as a result of "[t]he kickbacks, commissions and other compensation that Financial Freedom received in connection with force-placed insurance" (¶¶ 167–70).

## STANDARD OF REVIEW

In scrutinizing a complaint under Federal Civil Rule 12(b)(6), this Court must "accept all well-pleaded factual allegations" as true and "construe the complaint in the light most favorable to" Gorusch. *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it cannot rely solely on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a

complaint may survive the motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

As an initial matter, Defendants argue that, because OneWest was a federal savings association during relevant time periods, HOLA preempts Gorsuch's state-law claims against OneWest. It does not.

Under HOLA, "the [Office of Thrift Supervision ("OTS")] . . . occupies the entire field of lending regulation for federal savings associations" and is "authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations." 12 C.F.R. § 560.2(a). However, HOLA does not preempt state law "to the extent that [the state law] only incidentally affect[s] the lending operations of Federal savings associations or [is] otherwise consistent with the purposes of [the express preemption provision]," including "[c]ontract or commercial law." 12 C.F.R. § 560.2(c). The OTS explains that Section 560.2(c) "preserve[s] the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." *In re Ocwen Loan Serv., LLC Mortg. Serv. Litig.*, 491 F.3d 638, 643 (7th Cir. 2007) (quoting 61 Fed. Reg. 50951, 50966 (Sept. 30, 1966)). Therefore, Section 560.2(c) does not deprive persons allegedly harmed by a federal savings association of state-law remedies, like a breach of contract action, which only seek to enforce a federal savings association's existing contractual obligations. *See, e.g.*, *id.*; *Degutis v. Fin. Freedom LLC*, 987 F. Supp. 2d 1243, 1256 (M.D. Fla. 2013).

This Court dismissed the class action complaint in *Swain v. Wells Fargo Bank, N.A.*, Case No. 3:13-CV-1727, contemporaneous with the filing of this Memorandum Opinion and Order. The Class Action Complaint in this case and in *Swain* raise substantially similar issues. This Court relies on its

5

reasoning in *Swain* to dismiss Gorsuch's breach of contract and of the implied covenant of good faith and fair dealing, unjust enrichment, and TILA claims, to the extent those claims depend on the view that Paragraph 3 either caps the amount of flood insurance coverage Defendants may demand, or is ambiguous. *See Swain v. Wells Fargo Bank, N.A.*, Case No. 13-CV-1727, Doc. 45 at 5–13 (Sept. 18, 2014).

But, unlike *Swain*, Defendants obtained lender-placed insurance on Gorsuch's behalf. Defendants therefore received a "kickback" in connection with Gorsuch's mortgage. *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 137–41 (1st Cir. 2012). Still, her claim for breach of the implied covenant of good faith and fair dealing fails because the implied covenant is "a 'salutary rule of construction,' not . . . a basis for a cause of action." *Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 F. App'x 467, 472 (6th Cir. 2001) (quoting *Bolling v. Clevepak Corp.*, 20 Ohio App. 3d 113 (1984)). Gorsuch identifies no contract term Defendants breached by engaging in the kickback scheme.

Her TILA claim likewise fails. Gorsuch alleges a series of TILA violations, some of which this Court rejects because they depend on Gorsuch's reading of Paragraph 3 (¶ 136 ("[Financial Freedom] and One West Bank violated TILA by misrepresenting to Plaintiff and the Class that force-placed insurance would only be obtained in the amount 'necessary to protect the value of the Property and Lender's right in the property . . .'" )). Gorsuch also alleges that, under 12 C.F.R. § 226.18(d), Financial Freedom and OneWest Bank should have disclosed "finance charges, which include[] force-placed insurance premiums, including kickbacks" (¶ 141). But because Financial Freedom and OneWest Bank informed Gorsuch that she could obtain replacement-cost-value flood insurance through a provider of her choosing or through her lender (*i.e.*, by way of lender-placed insurance), and because Defendants accurately disclosed to Gorsuch the premium amount and term for lender-placed insurance

6

obtained on her behalf, federal law excludes the force-placed flood insurance premiums from TILA's "finance charges" category. *See* 12 C.F.R. § 226.4(d)(2). *See also* ¶¶ 79–80, 89, 95; Doc. 1-12 at 2; Official Staff Commentary, Truth in Lending Act, 46 Fed. Reg. 50288, 50303 (Oct. 9, 1981) ("Inaccuracies in disclosures are not violations if attributable to events occurring after disclosures are made. For example, when the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it, such a change does not make the original disclosures inaccurate.").

However, her unjust enrichment claim survives, to the extent it alleges "[t]he kickbacks, commissions, and other compensation that Financial Freedom received in connection with force-placed insurance were not legitimately earned" (¶ 167). Gorsuch fails to adequately allege that the terms of her mortgage bar Defendants from either (1) demanding flood insurance coverage equal to replacement cost value, or (2) force-placing insurance in that amount when she failed to obtain proper flood insurance coverage. But she has plausibly alleged that Defendants participated in an illegal kickback scheme, designed to enrich Defendants and SSIS at Gorsuch's expense by charging inflated, non-competitive insurance premiums for force-placed insurance (¶¶ 68–71, 85, 92). Ohio law supports an unjust enrichment claim based on those actions, despite the existence of the mortgage contract. *See Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, Inc., 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004). *See also Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984). "That the force-placed insurance was triggered by Plaintiff's [failure to obtain increased flood insurance] does not negate allegedly inequitable conduct by Defendants." *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1053 (N.D. Cal. 2013).

**Leave to Amend**

Gorsuch asks for leave to amend the Class Action Complaint in the event Defendants prevail on their Motion (Doc. 20 at 32 n.40). Leave to replead may be denied if an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Gorsuch's dismissed claims fail because, as a matter of law, Paragraph 3 authorizes Defendants to demand flood insurance coverage equal to replacement cost value. More careful pleading cannot cure that central defect

#### CONCLUSION

Paragraph 3 authorizes Financial Freedom to demand flood insurance coverage equal to replacement cost value; Gorsuch makes no claim the coverage requested by Financial Freedom exceeded that limit. Therefore, Gorsuch's claimed breach of Paragraph 3 is dismissed with prejudice. However, Gorsuch's kickback-related unjust enrichment claim survives. Defendants' Motion to Dismiss the Class Action Complaint (Doc. 16) is granted in part and denied in part.

IT IS SO ORDERED.

                                                         s/ *Jack Zouhary*
                                                         JACK ZOUHARY
                                                         U. S. DISTRICT JUDGE

                                                         September 18, 2014